**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 16 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| JOANNE M. OGDEN, | No. 16-35295 |
| Plaintiff-Appellant, | D.C. No. 2:12-cv-00584-RMP |
| v. | |
| PUBLIC UTILITY DISTRICT NO 2 OF GRANT COUNTY, DBA Grant County PUD, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Argued and Submitted April 11, 2018
Seattle, Washington

Before: HAWKINS and GRABER, Circuit Judges, and TEILBORG,** District Judge.

Plaintiff-Appellant Joanne Ogden ("Ogden") appeals the district court's

grant of summary judgment to Defendant-Appellee Public Utility District No. 2 of

Grant County ("PUD") on her Americans with Disabilities Act ("ADA"), Family

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable James A. Teilborg, United States District Judge for the District of Arizona, sitting by designation.

Medical Leave Act ("FMLA"), and related state claims. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. ADA and Related State Claims

Ogden alleges that she suffered actionable discrimination under the ADA in the forms of disparate treatment, failure to accommodate, and harassment by PUD. The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). Thus, to establish a prima facie case under the ADA, a plaintiff must show that: (1) she is disabled, (2) she is qualified to perform the essential functions of her position, and (3) she suffered an adverse employment action because of her disability. *See Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001).[1] To withstand a motion for summary judgment on an ADA claim, a plaintiff must either provide sufficient direct evidence of an employer's discriminatory intent, or give rise to an inference of discrimination by satisfying the burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Cordova v. State Farm Ins. Cos.*, 124

---

[1] Ogden's related state claim arises under the Washington Law Against Discrimination ("WLAD"), which is construed analogously with the ADA. *See, e.g.*, *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2005) (stating that "Washington's Law Against Discrimination tracks federal law"), *amended on denial of reh'g*, 433 F.3d 672 (9th Cir.), *amended on denial of reh'g*, 436 F.3d 1050 (9th Cir. 2006); *Arthur v. Whitman Cty.*, 24 F. Supp. 3d 1024, 1033 (E.D. Wash. 2014) ("The WLAD substantially parallels Title VII." (internal quotation marks omitted)). Accordingly, the court will treat the ADA and WLAD claims consistently.

F.3d 1145, 1148 (9th Cir. 1997) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

Here, assuming that the two actions alleged—placement in a different position and delay in career path—were adverse employment actions, there is insufficient direct evidence of discriminatory animus to create a genuine issue of material fact. Even if Ogden establishes the prima facie case under the first step of *McDonnell Douglas*, PUD gave legitimate, non-discriminatory reasons for both actions, and the record evidence does not create a genuine issue of material fact as to pretext. With regard to the placement, Ogden's former position was in fact eliminated in its previous form, as a cost-cutting measure, with its functions absorbed by another employee. Additionally, Ogden's extensive absences meant that she could not perform an essential function of a supervisor's job: being present at work to supervise. With respect to the delay in career path, the delay benefitted Ogden because she had a chance to prove that her performance met the required standards and, once she did, was compensated retroactively. To the extent that Ogden was treated differently, it was for a legitimate, non-discriminatory reason on this record.

Moreover, there is insufficient evidence of harassment to support an ADA claim on that ground. All leave requested by Ogden was granted by PUD, and her other demands were met, so there is likewise no evidence of failure to

accommodate Ogden's disability. Accordingly, the district court did not err in granting summary judgment to PUD on Ogden's ADA and WLAD claims.

## II. FMLA and Related State Claims

On the FMLA claim, Ogden had no right to restoration to her old job because (1) that job no longer existed for reasons unrelated to her FMLA leave, and (2) she was unable to perform an essential function of the old position: regular attendance. *See Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1097 (9th Cir. 2007) ("Though the FMLA generally confers the right to reinstatement, an employer may still terminate [or transfer] an employee during her leave if the employer would have made the same decision had the employee not taken leave." (citations omitted)); *see also* 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition . . . , the employee has no right to restoration to another position under the FMLA.").

Following the same analysis as on Ogden's ADA and WLAD claims, there is no evidence of retaliation to refute PUD's legitimate explanations for the allegedly adverse employment actions, making summary judgment appropriate even if Ogden established a prima facie case under the FMLA or Washington State Family Leave Act ("WFLA"). *See Cordova*, 124 F.3d at 1150. Accordingly, the district court did not err in granting summary judgment to PUD on Ogden's FMLA

4

and WFLA claims.

**AFFIRMED**.